JUSTICE NELSON
dissents.
¶37 I respectfully dissent from the Court’s determination that Ereth’s pleas were not voluntarily, intelligently and knowingly made. In my view they were, and, accordingly, I would affirm the decision of the District Court denying Ereth’s motion to withdraw her guilty pleas. First, it is necessary to review the pertinent trial court proceedings and the record.
¶38 At her change of plea hearing, Ereth testified that she spent considerable time discussing the proceedings against her with her counsel, Scott Albers. She stated that she had ample opportunity to obtain legal counsel and understood the alternatives available to her. She testified that she read the acknowledgment of waiver of rights with the help of her attorney and that she signed the waiver. She stated that she was not under the influence of alcohol or drugs. She testified that she had been fully apprised of the negotiations with regard to the plea agreement.
¶39 In explanation of her decision to enter the Alford plea, Ereth testified:
at this present time I do not wish to enter — do not wish to say that I did do this, but I feel that if this were to go to trial at this point, that the facts are overwhelming against me and it would result in a guilty verdict.
On being asked if she wished to proceed with her change of plea, she stated that she wished to proceed.
¶40 After receiving evidence regarding the children’s statements and videotaped interviews and Dr. Maynard’s physical examination findings substantiating sexual abuse, Albers questioned his client. Ereth testified that she had “no doubt” that she would be convicted if a jury believed the evidence introduced at the change of plea hearing. *305 In response to her counsel’s inquiry about whether she understood the Alford pleas, she testified:
I believe that the facts are overwhelming against me and I would be found guilty in a trial, but at this point I cannot admit to that guilt.
¶41 Ereth then testified that she understood that she could receive a ten-year prison sentence; that she understood the severity of the situation; and that she would be required to register as a sex offender. She also stated that she wished to avoid going to trial:
Q. [By Mr. Albers] Now, you are entering this plea, as I understand it, because you wish to avoid the trial at all costs?
A. Yes, I do.
Q. Could you explain to the Court what you consider to be the eventual outcome of a trial?
A. The eventual outcome, I believe at this point [is] that I would be found guilty.
¶42 Ereth also testified with respect to Ms. Kravcisin’s evaluation:
Q. [By Mr. Albers] That evaluation is of concern to me because it would indicate for the Court that you may not have committed this crime.
A. Yes.
Q. That report indicates that you do not come from a family that has a heavy history of sexual abuse.
A. Right.
Q. It also has a number of statements from family members which would deny the fact that you possibly could have done this?
A. Yes.
Q. It’s my understanding that your horror of the crime that is charged and your terror of possibly going to prison are the two principal things motivating this plea at this time?
A. Yes.
Q. And that this is the best option that you can come up with or that I’ve been able to offer or any attorney has been able to offer to keep you out of prison?
A. Yes.
Finally, Mr. Albers asked if Ereth believed she was probably guilty, to which she responded, “Yes.”
¶43 Following Ms. Kravcisin’s testimony Ereth pleaded “guilty” to Counts I and V and “not guilty” to the remaining three counts of the *306 information. Judge Johnson accepted Ereth’s Alford pleas and ordered a presentence investigation.
¶44 At the hearing on Ereth’s motion to withdraw her pleas, although she stated that she was not comfortable with the plea and was never happy with it, she nevertheless maintained that she personally believed a jury would not believe her and that she would be convicted. Moreover, on cross examination by the county attorney, Ereth admitted her plea was made freely and voluntarily; that she understood the consequences of her plea; that she suffered from no mental disability; that she believed she would be found guilty; and that she never informed anyone at the change of plea hearing that she was under undue influence or duress. Furthermore, she admitted that she indicated satisfaction with her attorneys at her change of plea hearing.
¶45 In denying Ereth’s motion to withdraw her plea, Judge Johnson stated that she had no question that Ereth “knew what she was doing.” Judge Johnson also noted that Ereth was “intelligent” and simply changed her mind. The court observed that there was no indication that Ereth’s pleas of guilty were anything but a voluntary and intelligent assessment of her situation and that it was this assessment of the charges and evidence presented which prompted her entry into a very beneficial plea agreement. The judge found that Ereth was simply “unhappy with the result of her choices.” I agree with the trial court’s appraisal.
¶46 The majority opinion concentrates almost entirely — and erroneously, in my estimation — on Ereth’s claim that she pleaded guilty under pressure from her attorney and on the basis of questionable repressed memory therapy. I cannot agree. As we pointed out in State v. Enoch (1994), 269 Mont. 8, 887 P.2d 175, “a guilty plea must be a knowing and intelligent choice among the alternative courses of action open to the defendant.” Enoch, 269 Mont. at 13, 887 P.2d at 178. See also North Carolina v. Alford (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162.
¶47 The record in this case indicates that Ereth chose to plead guilty because that alternative course of action was the one most likely to keep her out of a lengthy prison sentence. Given Ereth’s testimony at the various hearings regarding her change of plea, as referenced above, there is simply no merit to her claim that she was pressured by her attorney to plead guilty or that her pleas were somehow induced by her misapprehension of the repressed memory therapy in which she participated. In point of fact, her own testimony clearly indicates *307 that her motivation for pleading guilty was simply to avoid a jury trial and the possibility of a lengthy period of incarceration for her crimes. Ereth stated on several occasions during the change of plea hearing that the “facts were overwhelming” against her and that she had “no doubt” that a jury would convict her. In truth, even under her own assessment of her situation, she had few viable options available except to plead guilty.
¶48 We have recognized that a plea is not involuntary simply because it was entered to avoid the possibility of a greater punishment had the case gone to trial. State v. Milinovich (1994), 269 Mont. 68, 71, 887 P.2d 214, 216 (citing Brady v. United States (1970), 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747). Moreover, Ereth’s unwillingness to admit her guilt, either then or now, is not a basis for allowing her to withdraw her pleas.
[A]dmission of guilt... is not a constitutional requisite to the imposition of criminal penalty. An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.
Alford, 400 U.S. at 37, 91 S.Ct. at 167. Similarly, Ereth’s dissatisfaction with her previous decision is not a valid reason to allow her to go back on her plea agreement where the record clearly and unequivocally shows that her pleas were knowingly, voluntarily and intelligently made at the time.
¶49 The majority acknowledges the three-factor test which this Court utilizes in reviewing a district court’s denial of a criminal defendant’s attempt to withdraw a guilty plea. Enoch, 269 Mont. at 11-12, 887 P.2d at 177. Indeed, in considering whether the court’s interrogation of Ereth was adequate, the majority concludes that Judge Johnson’s interrogation was “substantial” and that she followed the proper statutory procedures at the change of plea hearing. Furthermore, we note that in deciding Ereth’s motion to withdraw and motion for reconsideration the court held three hearings at which it heard the testimony of Ereth and other witnesses. Nonetheless, in spite of this record, we conclude that Ereth’s plea was not voluntarily, intelligently and knowingly made. In coming to this conclusion we improperly substitute our judgment for that of the District Court’s, purely and simply.
¶50 In my opinion, Judge Johnson, in the proper exercise of her discretion, refused to contravene Ereth’s obviously voluntary pleas. The *308 District Court thoroughly examined Ereth and found her not only to be competent but intelligent. Judge Johnson determined that Ereth’s pleas were voluntary even though she would not admit to her guilt; that she understood the charges and potential punishment; that she understood the rights she was waiving; that she was not under the influence of drugs or alcohol; and, that she was satisfied with her attorneys. The District Court, having heard the testimony and having judged Ereth’s credibility, was certainly in the best position to determine whether her pleas were knowing, intelligent and voluntary. This Court, on the record here, has no business interfering with Judge Johnson’s decision. See State v. Hilton (1979), 183 Mont. 13, 19, 597 P.2d 1171, 1174.
¶51 Ereth’s choice to plead guilty was an intelligent choice among alternative courses of action — she could go to trial, be convicted on the “overwhelming evidence” of her guilt and spend a substantial number of years behind bars or, alternatively, she could plead guilty and guarantee dismissal of some of the charges against her and a more favorable prison sentence. She, wisely, chose the latter.
¶52 I would hold that the District Court did not abuse its discretion in denying Ereth’s motion to withdraw her guilty plea and, accordingly, I would affirm Judge Johnson’s decision. I respectfully dissent from our failure to do so.
JUSTICE GRAY join in the foregoing dissent.